**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

LUMINENT MORTGAGE CAPITAL, INC.;    :
MINERVA MORTGAGE FINANCE       :
CORPORATION; MERCURY MORTGAGE    :
FINANCE STATUTORY TRUST; and SATURN  :
PORTFOLIO MANAGEMENT, INC.,     :  **07 Civ. 10275 (RMB)**
                  :  **ECF CASE**

          Plaintiffs,      :
                  :
      v.              :
                  :
                  :
BARCLAYS CAPITAL INC.,       :
                  :
        Defendant.     :
                  :

------------------------------------------------------------- x

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Sean F. O'Shea (SO5476)
Michael E. Petrella (MP3794)
**O'SHEA PARTNERS LLP**
90 Park Avenue, 20th Floor
New York, New York 10016
Tel:    (212) 682-4426
Fax:    (212) 682-4437

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

    A.    The Parties ....................................................................................... 2

    B.    The Repurchase Agreement .......................................................... 2

    C.    Pricing of Securities under the Repurchase Agreement ................ 3

    D.    Defendant's Breach of the Repurchase Agreement ....................... 4

    E.    The Instant Motion .......................................................................... 6

ARGUMENT ....................................................................................................... 6

    I.    PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS PROPERLY PLEADED AS AN ALTERNATIVE TO THEIR CLAIM FOR BREACH OF EXPRESS CONTRACTUAL PROVISIONS ................................................................................... 6

    II.    PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT IS VALIDLY PLEADED IN THE ALTERNATIVE TO THEIR EXPRESS CONTRACT CLAIMS ................................................... 10

    III.    PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES IS LEGALLY SOUND BECAUSE A PATTERN OF DEFENDANT'S EGREGIOUS MISCONDUCT AIMED AT THE PUBLIC IS FAIRLY INFERABLE FROM THE COMPLAINT ................ 12

        A.    Defendant's Conduct Is Actionable as Conversion ........................... 12

        B.    Defendant's Conduct Was Egregious ................................................ 13

        C.    The Allegations in the Complaint Demonstrate that Defendant's Conduct Was Directed at the Public ............................... 14

    IV.    THE COMPLAINT ALLEGES FACTS GIVING RISE TO A FIDUCIARY RELATIONSHIP SUPPORTING PLAINTIFFS' DEMAND FOR AN ACCOUNTING .......................................................... 15

i

CONCLUSION..................................................................................................................  17

# TABLE OF AUTHORITIES

Page

**Cases**

*A.T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967)........................................................ 11

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566 (2d Cir. 2005)....................... 16

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. 1999) ........................................................................ 7

*Beck v. Moishe's Moving & Storage, Inc.*, 167 Misc.2d 960,
   641 N.Y.S.2d 517 (N.Y. Sup. Ct. 1995)............................................................................ 14

*Cappetta v. Lippman*, 913 F. Supp. 302 (S.D.N.Y. 1996)....................................................... 13

*Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985 (S.D.N.Y. 1984)..................................... 13

*Chalasani v. State Bank of India, New York Branch*, 235 A.D.2d 449,
   653 N.Y.S.2d 28 (2d Dep't 1997)....................................................................................... 16

*Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC*, 45 A.D.3d 487,
   847 N.Y.S.2d 33 (1st Dep't 2007)........................................................................................ 7

*City of Amsterdam v. Daniel Goldreyer, Inc.*, 882 F. Supp. 1273 (E.D.N.Y. 1995)............. 12

*Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795, 119 S. Ct. 1597,
   143 L. Ed. 2d 966 (1999)...................................................................................................... 7

*Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 663 N.E.2d 289,
   639 N.Y.S.2d 977 (1995)................................................................................................. 6, 9

*DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999)....................................... 16

*Fantozzi v. Axsys Technologies, Inc.*, No. 07 Civ. 2667 (LMM),
   2007 WL 2454109 (S.D.N.Y. Aug. 20, 2007)................................................................... 11

*Gelb v. Zimet Bros., Inc.*, 34 Misc.2d 401, 228 N.Y.S.2d 111 (N.Y. Sup. Ct. 1962)........... 13

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998).................................................................................... 9

*Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d Cir. 1994) ...................................................... 7

*In re Louis Frey Co., Inc.*, Nos. 06 Civ. 7587(RMB), 7588(RMB),
   2007 WL 924206 (S.D.N.Y. Mar. 26, 2007)..................................................................... 15

*Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234 (S.D.N.Y. 1992)................. 10

*Kubin v. Miller*, 801 F. Supp. 1101 (S.D.N.Y. 1992)............................................................. 13

*LaBarte v. Seneca Resources Corp.*, 285 A.D.2d 974,
    728 N.Y.S.2d 618 (4th Dep't 2001)................................................................................. 17

*MacPhee v. Verizon Communications Inc.*, No. 06-CV-7870 (BSJ),
    2008 WL 162899 (S.D.N.Y. Jan. 15, 2008) ..................................................................... 10

*Mayer v. Monzo*, 221 N.Y. 442, 117 N.E. 98 (1917)............................................................. 13

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763,
    639 N.Y.S.2d 283 (1995).................................................................................................. 12

*Olshansky v. Sutton*, No. 00 CIV. 3539 (LAP),
    2001 WL 99857 (S.D.N.Y. Feb. 6, 2001)........................................................................ 12

*Orange County Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)....................................................................... 7, 10

*Outback/Empire I, Ltd. Partnership v. Kamitis, Inc.*, 35 AD.2d 563,
    825 N.Y.S.2d 747 (2d Dep't 2006).................................................................................... 9

*Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529 (2d Cir. 2001).......................................... 14

*R.L. Rothstein Corp. v. Kerr S.S. Co.*, 21 A.D.2d 463,
    251 N.Y.S.2d 81 (1st Dep't 1964).................................................................................. 13

*Rodney v. KPMG Peat Marwick*, 143 F.3d 1140 (8th Cir. 1998)................................... 13, 16

*Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288,
    758 N.Y.S.2d 284 (1st Dep't 2003).................................................................................. 7

*Suffolk Sports Center, Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241,
    628 N.Y.S.2d 952 (2d Dep't 1995).................................................................................. 14

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005)............... 14

*Van Syckle v. C.L. King & Associates, Inc.*, 822 F. Supp. 98 (N.D.N.Y. 1993).................... 13

*Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Ins. Co.*,
    149 F.3d 134 (2d Cir. 1998)............................................................................................ 16

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004)............................................................................... 7

iv

**Rules**

*Fed. R. Civ. P.* 8(e)(2) ........................................................................................ *passim*

*Fed. R. Civ. P.* 12(b)(6) ...................................................................................... 14, 17

**Other Authorities**

1 N.Y. Jur. 2d, Accounts § 34 ............................................................................. 16

James A. Moore & Jo D. Lucas, *Moore's Federal Practice*, ¶ 8.32 (2d ed. 1994) .............. 7

Charles A. Wright & Arthur R. Miller, 5 *Federal Practice and Procedure: Civil 2d* § 1283 (1990) ................................................................................................. 10

## PRELIMINARY STATEMENT

Plaintiffs Luminent Mortgage Capital, Inc. ("Luminent"), Minerva Mortgage Finance Corporation ("Minerva"), Mercury Mortgage Finance Statutory Trust ("Mercury"), and Saturn Portfolio Management, Inc. ("Saturn," and collectively with Luminent, Minerva, and Mercury, "Plaintiffs") submit this Memorandum of Law in opposition to the motion of Defendant Barclays Capital Inc. ("Defendant" or "Barclays") to dismiss Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and an accounting, and to dismiss Plaintiffs' demand for punitive damages.

Defendant's motion is without merit.  Its argument that Plaintiffs' implied covenant of good faith and fair dealing and unjust enrichment claims may not accompany an express contract claim disregards Federal Rule of Civil Procedure 8(e)(2)'s explicit sanction of alternative, inconsistent and hypothetical claims.  As explained below, factual and concomitant legal uncertainties make Plaintiffs' implied covenant and unjust enrichment claims proper and necessary accompaniments to the breach of contract claim, at least at this early stage. Defendant's argument that the Complaint fails to allege the predicates for a punitive damages demand in a contract case – egregious and publicly-oriented misconduct separately actionable in tort – is founded on a crabbed reading of the Complaint and fails to accord Plaintiffs the benefit of inferences to which they are entitled on a motion to dismiss.  Defendant's challenge to Plaintiffs' accounting cause of action, on the ground that a fiduciary relationship is not alleged, is similarly flawed because Plaintiffs' allegations of Defendant's unilateral power to liquidate securities held as collateral are sufficient to give rise to a fiduciary duty.

As earlier noted in connection with the pre-motion conference, however, even if the motion were to succeed, it is a purely academic exercise that achieves nothing other than a waste of the time and resources of both Court and counsel.  The motion does not narrow the issues for discovery, nor does it streamline the case.  Rather, it merely seeks to strike a demand for punitive damages, and to prune three causes of action from the Complaint on the grounds that they are purportedly superfluous in light of other, admittedly well-pleaded claims.  It is a make-work

motion that will achieve absolutely nothing productive in terms of promoting the substantive disposition of this case. Far more sensible would have been to address these issues at the close of all discovery (if ever) in a Rule 56 motion.

## STATEMENT OF FACTS

### A.    The Parties.

Luminent is a real estate investment trust operating in Philadelphia, Pennsylvania. (Complaint ("Compl."), ¶ 11). Minerva, Mercury, and Saturn each are qualified real estate investment trust subsidiaries of Luminent. (*Id.*) Defendant is an investment banking division of Barclays Bank PLC and a registered broker-dealer. (*Id.*, ¶ 13).

### B.    The Repurchase Agreement.

Plaintiffs each entered into a separate "Master Repurchase Agreement" with Defendant, which agreements were supplemented by certain annexes attached thereto (the separate agreements between each of the Plaintiffs and Defendant are collectively referred to herein as the "Repurchase Agreement"). (*Id.*, ¶ 15). Each such agreement is substantially identical for purposes of the issues relevant to the instant motion. (See Affidavit of Jeffrey T. Scott, sworn January 7, 2008 ("Scott Aff."), Exh.'s A-D).

The Repurchase Agreement functioned as a financing mechanism; pursuant to their respective Repurchase Agreements with Defendant, Plaintiffs purchased securities with funds loaned by Defendant, and transferred the purchased securities to Defendant as collateral for the loans. Plaintiff would subsequently "repurchase" the securities from Defendant on a specified date for the amount of the loan plus an agreed rate of interest. (Compl., ¶¶ 14, 16; Scott Aff., Ex. A at BCI-LUM 0002, § 1). If the value of the securities held by Defendant fell beneath a specified threshold relative to the loan amount, Defendant could declare a margin call and demand additional collateral from the counterparty Plaintiff. If a Plaintiff failed to furnish the additional collateral, Defendant could declare an "event of default" and either (1) liquidate the

securities or (2) keep the securities but credit the securities' value against the outstanding loan amount.  (See, *e.g.*, *id.*, at BCI-LUM 0009 § 11(d)(i)).

### C.    Pricing of Securities under the Repurchase Agreement.

Critical to the instant action is the method by which the value of a security held by Defendant was determined, both for purposes of declaring a margin call and for purposes of liquidation.  With respect to the liquidation value of a security (or its "credit" value, if Defendant elected to keep the security and credit its value against the loan amount) in the event of a party's failure to meet a margin call, Section 11 of the Repurchase Agreement states in pertinent part:

> If the nondefaulting party exercises or is deemed to have exercised the option referred to in subparagraph (a)[1] of this Paragraph, the nondefaulting party, without prior notice to the defaulting party, may:
>
>> (i) As to Transactions in which the defaulting party is acting as Seller, (A) immediately sell, in a recognized market (or otherwise *in a commercially reasonable manner) at such price or prices as the nondefaulting party may reasonably deem satisfactory*, any or all Purchased Securities subject to such Transactions and apply the proceeds thereof to the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder or (B) in its sole discretion elect, in lieu of selling all or a portion of such Purchased Securities, to give the defaulting party credit for such Purchased Securities *in an amount equal to the price therefor on such date, obtained from a generally recognized source or the most recent losing bid quotation from such a source*, against the aggregate unpaid Repurchase Prices and any other amounts owing by the defaulting party hereunder . . . .

(*Id.*, at BCI-LUM 0009 § 11(d)(i) (emphasis added)).  Thus, in the event of a default by a Plaintiff, Defendant was obligated to sell the securities held by it at a "reasonabl[e]" price or "in a commercially reasonable manner."  If Defendant opted to retain a security, the Plaintiff should

---

[1]    *I.e.*, the option to declare an "event of default" if the counterparty fails to, *inter alia*, meet a margin call.  (*Id.*, at BCI-LUM 0008 § 11(d)(a)).

have been credited for each such security based on a price obtained from a generally recognized source. Section 11(d), however, states that "in the absence of a generally recognized source for prices or bid or offer quotations for any Security," Defendant could "in its sole discretion" establish the source for the price. (*Id.*, at BCI-LUM 0009 § 11(d)).

Concerning the antecedent question, however – *i.e.*, determining the price of a securities for purposes of ascertaining whether a margin call was warranted to begin with (a failure by a Plaintiff to comply with such margin call potentially amounting to an event of default referenced in the prior paragraph) – the Repurchase Agreement required Defendant to ascertain the "Market Value" of the securities, which term is defined as "the price for such Securities on such date obtained from a generally recognized source agreed to by the parties or the most recent closing bid quotation from such a source . . . ." (*Id.*, at BCI-LUM 0003 § 2(j)).

### D.    Defendant's Breach of the Repurchase Agreement.

From time to time during 2006 and 2007, in accordance with their respective Repurchase Agreements, Plaintiffs executed various repurchase transactions, transferring various bonds to Defendant pursuant to the Repurchase Agreement. (Compl., ¶ 21). In early August 2007, Defendant issued margin calls with respect to the bonds in its possession, ultimately demanding from Plaintiffs a total of approximately $35 million. These margin calls, however, were mis-premised on Defendant's gross and unreasonable undervaluation of the bonds in question. (*Id.*, ¶ 22). Although the margin call coincided with turmoil in the bond markets, Defendant's gross undervaluation of the bonds – which in some cases were rated AA or AAA, Standard & Poor's highest ratings – amounted to price gouging in reverse. (*Id.*) Consequently, Plaintiffs refused to fully comply with the margin demands. (*Id.*, ¶ 23).

Following Plaintiffs' refusal, Defendant on or about August 8, 2007 declared an "Event of Default" under Section 4 of the Repurchase Agreements, and subsequently informed Plaintiffs of the results of its purported attempts to liquidate the bonds. (*Id.*, ¶¶ 24-25). On September 10, 2007, Defendant demanded that Plaintiffs make a "close-out deficit" payment of approximately

$9.61 million, representing the difference between the amounts loaned to Plaintiffs less the purported value of the securities supposedly liquidated (or retained) by Defendant. (*Id.*, ¶ 26). Plaintiffs repeatedly sought, but Defendant refused, any information concerning Defendant's purported liquidation efforts. (*Id.*)

Accompanying Defendant's demand letters were several spreadsheets purporting to document its disposition of the bonds. In certain instances, bonds were merely purported to have been sold to unidentified "3rd part[ies]." Other instances lacked any indication of a third-party sale; presumably, Defendant retained the bonds. (*Id.*, ¶¶ 27-28). Defendant furnished no other information describing its valuation efforts or interactions with potential purchasers. (*Id.*, ¶ 28). In several instances of bonds purportedly sold to unidentified "3rd part[ies]," the indicated sale price was clearly false or wildly unreasonable, being far below the bonds' fair value. For example, one AA-rated bond purportedly was sold for just one-tenth its face value. (*Id.*, ¶ 30-33). In another instance, an AAA-rated bond was purportedly sold for only one-third its true value. (*Id.*, ¶ 34).

In fact, Defendant did not attempt to sell or valuate these bonds in a commercially reasonable manner or at a reasonable price, despite its obligation under the Repurchase Agreements to do so. Instead, Defendant confiscated these bonds and credited Plaintiffs for only a fraction of their true value, concealing its sham liquidation efforts with opaque and essentially useless documentation.

### E.    The Instant Motion.

Plaintiffs commenced this action on November 13, 2007, asserting claims for breach of contract; breach of the implied covenant of good faith and fair dealing; and unjust enrichment, and also demanded an accounting by Defendant. (*Id.,* ¶¶ 50-70).[2]    Defendant now moves

---

[2]    Plaintiffs also assert a separate claim for breach of the repurchase agreement between Plaintiff Saturn and Defendant (see *id.*, ¶¶ 71-75), arising from facts largely distinct from the foregoing. Defendant has not moved to dismiss that claim.

pursuant to Rule 12(b)(6) to dismiss the claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and an accounting and the demand for punitive damages.

## ARGUMENT

I.    **PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING WAS PROPERLY PLEADED AS AN ALTERNATIVE TO THEIR CLAIM FOR BREACH OF EXPRESS CONTRACTUAL PROVISIONS.**

Defendant argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it merely duplicates Plaintiffs' claim for breach of contract.  (Memorandum of Law of Barclays Capital Inc. in Support of Its Motion to Dismiss ("Def. MOL") at 5).   According to Defendant, the two claims are premised on "identical" allegations.  (*Id.*)  Defendant's argument is without merit.  The two claims at issue, being subject only to the minimal pleading requirements of Federal Rule of Civil Procedure 8(a), are adequately – and, as detailed further below, *necessarily* – pleaded in the alternative.

The covenant of good faith and fair dealing is an implied term of every contract governed by New York law.  *Dalton v. Educ. Testing Serv.,* 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291, 639 N.Y.S.2d 977, 979 (1995).

> [I]n some cases a party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations.  The covenant precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.  Hence, the covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement.

*Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 559-60 (S.D.N.Y. 2007) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 8(e)(2) permits the pleader to assert claims premised on alternative or inconsistent legal theories.  *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) (citing James A. Moore & Jo D. Lucas, *Moore's Federal Practice*, ¶ 8.32, at 8-214 to 8-

6

215 (2d ed. 1994)).  The Federal Rules of Civil Procedure "recognize that *a person may not be sure in advance upon which legal theory she will succeed*, and so permit parties to 'set forth two or more statements of a claim . . . alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.'"  *Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795, 805, 119 S. Ct. 1597, 1603, 143 L. Ed. 2d 966 (1999) (emphasis added).  The pleader need not expressly state that a claim is pleaded as an alternative to another.  *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999).

At the pleading stage, a claimant may plead alternative claims for breach of express and implied covenants even where "the good faith claims are indistinguishable from the contract claims."  *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) ("the Federal Rules explicitly permit a party to plead causes of action in the alternative, 'regardless of consistency.'   Thus, while Xpedior may not press both claims *to judgment,* it is free to litigate both") (emphasis in original); *cf. Citi Mgmt. Group, Ltd. v. Highbridge House Ogden, LLC*, 45 A.D.3d 487, 487, 847 N.Y.S.2d 33, 34 (1st Dep't 2007) (because at pleading stage parties are permitted to assert claims in the alternative, implied covenant of good faith claim should not be dismissed as duplicative of breach of contract claim); *Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 290, 758 N.Y.S.2d 284, 286 (1st Dep't 2003) (denying pre-answer motion to dismiss: "[w]hile contract and implied duty claims may be redundant, there are cases in which both are viable").

Accordingly, Plaintiffs' claim for breach of the implied covenant must survive the instant motion, even if Defendant were correct that the claim is premised on allegations identical to those of the breach of contract claim.  Contrary to Defendant's superficial characterization of the Complaint, however, substantial factual, and concomitant legal, uncertainties faced by Plaintiffs render the concurrent assertion of alternative claims for breach of express contractual provisions and for breach of the implied covenant of good faith and fair dealing wholly consistent with Rule 8(e)(2).

For example, if Defendant sold any subject bond to a third party, it was obligated to do so at a "reasonabl[e]" price in a generally recognized market or, if no such market existed, "otherwise in a commercially reasonable manner." (Scott Aff., Ex. 1, at BCI-LUM 0009 § 11(d)(i)(A)). Given Defendant's gross undervaluation of the bonds, if Defendant did in fact sell the bonds to third parties, it plainly failed to do so either at a reasonable price in a generally recognized market, or otherwise in a commercially reasonable manner. Being contrary to an express term of the Repurchase Agreement, this obviously would support Plaintiffs' First Cause of Action, for breach of contract.[3] (Compl., ¶¶ 50-53). Notably, Defendant has *not* moved to dismiss this claim. (See Def. MOL, at, *e.g.*, 10).

In the case of a retention of a security (which Defendant claims it did with respect to some of the bonds), Defendant was obligated to credit the Plaintiff "in an amount equal to the price therefor on such date, obtained from a generally recognized source or the most recent losing bid quotation from such a source." (Scott Aff., Ex. 1, at BCI-LUM 0009, §11(d)(i)(B)). The last paragraph of Section 11(d), however, does state that in the event that a "generally recognized source for prices" does not exist, Defendant may establish the price "in its sole discretion." (*Id.*, § 11(d)). With respect to any bonds that Defendant *did* retain, it is unclear (due to Defendant's intransigence in forthrightly disclosing its liquidation efforts) whether Defendant purported to valuate them according to a price "obtained from a generally recognized source," § 11(d)(i)(B), or, instead purported to do so "in the absence of a generally recognized source for prices . . . ," § 11(d). Consequently, it is unclear whether the factual predicate exists for Defendant even to advance an argument that it was bound only by "discretion" rather than reasonableness.

---

[3]     At this early, pre-answer stage of the action, Plaintiffs are unaware of Defendant's theories of defense to the breach of contract claims. In the event that Defendant's defense conjures a definition of "reasonabl[eness]" or "commercial[] reasonable[ness]" in conflict with its obligation of good faith and fair dealing, Plaintiffs reserve all rights to assert their implied covenant claim in the alternative to the express covenant claim with respect to third-party sales.

If discovery reveals that Defendant retained one or more bonds *and* purported to valuate them "in the absence of a generally recognized source for prices," and Defendant subsequently persuades the Court it was bound only by discretion (an issue that is not addressed in the instant motion), this case will present a paradigmatic instance for enforcement of the implied covenant of good faith and fair dealing. *See, e.g., Outback/Empire I, Ltd. Partnership v. Kamitis, Inc.*, 35 AD.2d 563, 825 N.Y.S.2d 747, 747-48 (2d Dep't 2006) (even where contract confers "sole and absolute discretion" on a party, implied covenant of good faith and fair dealing obligates party to exercise such discretion in good faith); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998) ("broker's power to liquidate must be exercised in good faith under the existing facts and circumstances") (internal quotation marks omitted); *Dalton*, 87 N.Y.2d at 389, 663 N.E.2d at 291, 639 N.Y.S.2d at 979 ("Where the contract contemplates the exercise of discretion, [implied covenant of good faith and fair dealing] includes a promise not to act arbitrarily or irrationally in exercising that discretion").[4]

Although subsection 11(d)(i)(B) contains no explicit "reasonableness" language, it is clear, and Plaintiffs have alleged, that the Repurchase Agreement obligated Defendant to act in a commercially reasonable manner with respect to *any* valuation of the collateral, (Compl., ¶¶ 35, 51), including Defendant's retention of the bonds pursuant to subsection 11(d)(i)(B).

Although Plaintiffs believe to be legally erroneous the (hypothetical) argument that Defendant was bound only by discretion in valuating retained bonds in the absence of a generally recognized source for prices, it is theoretically possible that Defendant may in the future persuade the Court in its favor. Should the Court now dismiss Plaintiffs' claim for breach of the implied covenant of good faith as superfluous – on the theory that Plaintiffs have validly pleaded

---

[4]    Additionally, there are issues of fact concerning whether Defendant properly valuated the bonds for purposes of declaring the margin calls here. The Repurchase Agreement required Defendant to accord the bonds their "Market Value," according to a generally recognized source mutually agreed upon by the parties. (Scott Aff., Ex. A, at BCI-LUM 0005 § 4(a) and BCI-LUM 0003 § 2(j)). Plaintiffs have alleged that Defendant grossly undervalued the bonds in asserting its purported right to demand additional collateral. (Compl., ¶¶ 22-23).

a breach of contract claim premised on the reasonableness language – but subsequently rule that Defendant was not bound by any reasonableness requirement but only by its "sole discretion," Plaintiffs will have been deprived of a valid cause of action applicable in that latter circumstance. Plaintiffs will then be compelled to move for reinstatement of the implied covenant claim, which undoubtedly will be opposed by Defendant and will result in more expense, delay and wasted time. In light of the extant legal and factual uncertainties, Plaintiffs' assertion of an implied covenant claim is entirely proper under Rule 8(e)(2), and the motion to dismiss this claim should be denied.

## II.    PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT IS VALIDLY PLEADED IN THE ALTERNATIVE TO THEIR EXPRESS CONTRACT CLAIMS.

At the pleading stage, a claim for unjust enrichment can be asserted in the alternative to an express contract claim. *Orange County Choppers,* 497 F. Supp. 2d at 560 (citing *Fed. R. Civ. P.* 8(e)); *see also MacPhee v. Verizon Communications Inc.*, No. 06-CV-7870 (BSJ), 2008 WL 162899, *6 (S.D.N.Y. Jan. 15, 2008) ("lenient provisions for alternative pleading" in *Fed. R. Civ. P.* 8(e)(2) permit plaintiff to sue upon theories of express contract and unjust enrichment); *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) ("[f]ederal courts have construed this language [of *Fed. R. Civ. P.* 8(e)(2)] to 'permit plaintiffs to sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim . . . .'") (citing Charles A. Wright & Arthur R. Miller, 5 *Federal Practice and Procedure: Civil 2d* § 1283, at 537 (1990)).

The instant matter stands at the very outset of the litigation. Plaintiffs have alleged that Defendant breached various duties owed them. Defendant's full response to these allegations can only be surmised. As noted above, it is unclear what Defendant in fact did in disposing of the bonds at issue. Discovery is in its initial stages. It may well produce information suggesting that Defendant acted well outside the contours of any contractual relationship. Alternatively, it may well be the case that, when discovery is complete, Plaintiffs will voluntarily abandon the unjust enrichment claim, and, in any event, summary judgment is always available to narrow the

10

issues for trial after all of the facts are disclosed. Dismissal of Plaintiffs' alternative claim for unjust enrichment is therefore improper at this early juncture. *See Fantozzi v. Axsys Technologies, Inc.*, No. 07 Civ. 2667 (LMM), 2007 WL 2454109, *3 (S.D.N.Y. Aug. 20, 2007) (citing *Fed. R. Civ. P.* 8(e)(2), court declined to dismiss alternatively pleaded claims for, *inter alia*, unjust enrichment).

What is clear, however, is that the instant motion serves no practical purpose in framing the issues or reducing the scope of the litigation. Defendant is adamant that the challenged claims are "superfluous," "redundant" and "duplicative" of Plaintiffs' breach of contract claim. (See Def. MOL at, *e.g.*, 2, 5, 8). Accordingly, Defendant concedes that the assertion of these claims will not enlarge the scope of discovery. Rule 8(e)(2) embodies the principle that discovery, followed by summary judgment, is the preferred practice for winnowing out unmeritorious claims. *See A.T. Brod & Co. v. Perlow*, 375 F.2d 393, 398 (2d Cir. 1967) (for purposes of motion to dismiss, court must accept truth of allegations, which may be pleaded in minimal fashion; such procedural mechanism is counterbalanced by defendant's opportunity to avoid protracted litigation through summary judgment and other devices) (citing *Fed. R. Civ. P.* 16, 26-37, 56). The Court should deny the motion to dismiss the unjust enrichment claim, and take up the matter when and if Defendant, after discovery, moves for summary judgment on the claim.

### III.    PLAINTIFFS' DEMAND FOR PUNITIVE DAMAGES IS LEGALLY SOUND BECAUSE A PATTERN OF DEFENDANT'S EGREGIOUS MISCONDUCT AIMED AT THE PUBLIC IS FAIRLY INFERABLE FROM THE COMPLAINT.

Defendants argue for dismissal of Plaintiffs' punitive damage demand on the grounds that such awards (1) in the context of a contractual relationship, are warranted only when the actionable conduct amounts to a separate tort (Def. MOL, at 8-9), and (2) require misconduct aimed at the public generally (*id.*, at 9). Defendant's arguments are premised on an overly restrictive reading of the Complaint. Equally erroneous is Defendant's suggestion, in passing, that its conduct was not sufficiently egregious to warrant punitive damages. (*Id.*)

### A.    Defendant's Conduct Is Actionable as Conversion.

The New York Court of Appeals has held that an award of punitive damages for breach of contract requires that the underlying conduct "be actionable as an independent tort." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995). For example, "[w]here a party has fraudulently induced the plaintiff to enter into a contract, it may be liable in tort*,* or where a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim." *Id.* at 316, 662 N.E.2d at 767-68, 639 N.Y.S.2d at 287-88 (citations omitted). Plaintiffs' allegations satisfy this standard because Defendant's underlying conduct would be actionable as conversion.[5]

Generally, conversion is defined as the "unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Olshansky v. Sutton*, No. 00 CIV. 3539 (LAP), 2001 WL 99857, *6 (S.D.N.Y. Feb. 6, 2001). However, "[g]iven New York's broad interpretation, lawful possession of the property of another does not necessarily defeat a claim of conversion." *City of Amsterdam v. Daniel Goldreyer, Inc.*, 882 F. Supp. 1273, 1280 (E.D.N.Y. 1995) (complaint stated cause of action for conversion stemming from damage to artwork possessed by defendant pursuant to restoration agreement); *cf. R.L. Rothstein Corp. v. Kerr S.S. Co.*, 21 A.D.2d 463, 467, 251 N.Y.S.2d 81, 84 (1st Dep't 1964) (conversion not "confined to the beneficial or general ownership of goods; there may also be a conversion of goods by invading a right to possession retained as a security interest"). A conversion claim will lie for wrongful disposition of securities in connection with a margin call. *Cf. Cauble v. Mabon Nugent & Co.*, 594 F. Supp. 985, 995 (S.D.N.Y. 1984) (broker liable for conversion for unlawfully and without notice selling stocks carried on margin); *Van Syckle v. C.L. King & Associates, Inc.*, 822 F. Supp. 98, 106 (N.D.N.Y. 1993) ("party who wrongfully sells stock of

---

[5]    Additionally, Defendant's conduct is actionable as a breach of the fiduciary duty owed by it to Plaintiffs, as discussed in Point IV, *infra*.

another may be found guilty of conversion"); *see also Kubin v. Miller*, 801 F. Supp. 1101, 1118 (S.D.N.Y. 1992) (bonds can be subject of conversion claim).

The transactions contemplated by the Repurchase Agreement are styled as a sale of securities by Plaintiffs to Defendant subject to an obligation of Plaintiffs to repurchase the securities. In substance, however, these repurchase arrangements are financing mechanisms: the "buyer" (*i.e.*, Defendant) loans purchase money to the "seller" (*i.e.*, a Plaintiff), which uses the loaned funds to purchase a security, which is in turn transferred ("sold") to the "buyer" as collateral for the loan. *See, e.g., Rodney v. KPMG Peat Marwick*, 143 F.3d 1140, 1142 (8th Cir. 1998) ("Repurchase agreements can be characterized as loans, with the bought-and-resold security functioning as collateral") (citing 15 U.S.C. § 80a-2(a)(23)). Defendant's wrongful liquidation of the bonds, *i.e.*, collateral, in its possession is actionable as conversion. *See Gelb v. Zimet Bros., Inc.*, 34 Misc.2d 401, 402, 228 N.Y.S.2d 111, 112 (N.Y. Sup. Ct. 1962) (sale of collateral securing loan, in absence of default on loan, constituted conversion) (citing *Mayer v. Monzo*, 221 N.Y. 442, 117 N.E. 98 (1917)).

### B.    Defendant's Conduct Was Egregious.

"[W]here a cause of action involves . . . a breach of contract, punitive damages may be awarded if the defendant's conduct was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply a criminal indifference to civil obligations." *Cappetta v. Lippman*, 913 F. Supp. 302, 306-07 (S.D.N.Y. 1996) (footnote and internal quotation marks omitted). Here, the Complaint alleges that (*inter alia*) Defendant, unfairly capitalizing on unease in the bond market, engineered bogus margin calls upon Plaintiffs by grossly and deliberately undervaluing collateral in its possession. (Compl., ¶¶ 8, 22-23, 37). Apparently concluding that Plaintiffs would not (or perhaps could not) meet the margin calls, Defendant then declared an event of default, purportedly sold some of the bonds at a fraction of their true value, and simply kept others while crediting Plaintiffs with only a fraction of the bonds' true worth. Plainly, this represents wanton dishonesty implying a criminal indifference to civil obligations. *See Beck v. Moishe's Moving & Storage, Inc.*, 167 Misc.2d 960, 965, 641

13

N.Y.S.2d 517, 520-21 (N.Y. Sup. Ct. 1995) (moving company's extortionate demands for increased fees, menacing behavior and loss of certain items warranted punitive damage award); *Suffolk Sports Center, Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241, 247, 628 N.Y.S.2d 952, 956 (2d Dep't 1995) (commercial landlord's "calculated effort to abrogate tenancy by demanding new lease terms and additional monies and threats to interfere with tenant's business "involve[d] that degree of bad faith evincing a disingenuous or dishonest failure to carry out [the parties'] contract so as to justify the imposition of punitive damages) (internal quotation marks omitted).

### C.   The Allegations in the Complaint Demonstrate that Defendant's Conduct Was Directed at the Public.

On a Rule 12(b)(6) motion, all inferences are to be drawn in favor of the plaintiff. *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 2001). To the extent that conduct directed at the public, or at least multiple victims, is required to support punitive damages in the contractual context, *see Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 262 (S.D.N.Y. 2005) (punitive damages awardable for breach of contract when defendant aimed conduct at public), such conduct is fairly inferable from Plaintiffs' allegations. The Complaint alleges that Defendant "is a registered broker-dealer engaged in the business of . . . buying and selling securities and, in connection with such activity, often enters into . . . 'repurchase agreements'" of the kind at issue here. (Compl., ¶ 13). The contracts between the various Plaintiffs and Defendant do not reflect singular, *sui generis* business transactions. To the contrary, the Repurchase Agreement employed by Defendant is a form contract published by the Bond Market Association. (See, *e.g.*, Scott Aff., Ex. A, at 1). This suggests that Defendant has numerous similar contracts with other counterparties (Defendants do not deny this in their dismissal motion). Likewise, there is nothing in the Complaint suggesting why Plaintiffs would have been singled out as victims. Instead, one may properly infer that Defendant exploited market perturbations as a pretext for similar improper margin calls with its other repurchase agreement counterparties.

14

Moreover, the bonds at issue in this case are mortgage-backed securities of the kind at the center of the current turmoil in the securities and credit markets – the biggest financial story since the Enron debacle. The present action concerns Defendant's seizing upon that turmoil as a pretext to enrich itself at the expense of bond investors such as Plaintiffs – a scheme which only compounds the current financial crisis itself. Defendant's misconduct is not confined to a private contractual relationship with Plaintiffs, but dovetails with a broader market phenomenon. Clearly, courts are warranted in punishing willful misconduct relating to systemic market crises.

## IV.    THE COMPLAINT ALLEGES FACTS GIVING RISE TO A FIDUCIARY RELATIONSHIP SUPPORTING PLAINTIFFS' DEMAND FOR AN ACCOUNTING.

Defendant contends that Plaintiffs' demand for an accounting should be dismissed because the complaint has not expressly alleged that a fiduciary or confidential relationship existed between Plaintiffs and Defendant. (Def. MOL, at 8). This is contrary to Rule 8's simple pleading requirements and is otherwise incorrect.

"Where . . . a fiduciary duty is undertaken by agreement, the existence of a fiduciary relationship is a question of fact." *In re Louis Frey Co., Inc.*, Nos. 06 Civ. 7587 (RMB), 7588 (RMB), 2007 WL 924206, *5 (S.D.N.Y. Mar. 26, 2007) (**Berman**, J.) (internal quotation marks omitted). Under New York law,

> [n]o particular words are necessary to create a fiduciary relationship which will serve as the basis for an equitable action for accounting. Such a relationship is created where one party entrusts to another some money or property with respect to which such other is bound to reveal his or her dealings, as, where one assigns accounts receivable to another as security for advances, and the assignee fails to account for the amount collected thereon, *where an asset held by the pledgee as collateral is sold by the pledgee, where one party occupies and controls property of which both parties share ownership, or where one transfers stock to another under an agreement whereby the transferor is to receive a percentage of the dividends from the stock and retains an option to repurchase the stock prior to any sale to another, and the transferee disposes thereof without accounting for the dividends or giving the transferor an opportunity to repurchase*.

15

1 N.Y. Jur. 2d, Accounts § 34 (emphasis added; footnotes omitted).  As discussed in Point III, *supra*, the Plaintiffs' conveyance to Defendant of various bonds pursuant to the Repurchase Agreement were in substance the giving of collateral.  *See Rodney*, 143 F.3d at 1142.  Defendant had total control over the liquidation process and an obligation to act fairly.  Plaintiffs have thus alleged facts demonstrating a fiduciary relationship with Defendant.  *See Chalasani v. State Bank of India, New York Branch*, 235 A.D.2d 449, 450, 653 N.Y.S.2d 28, 28 (2d Dep't 1997) (pledge of apartment units as collateral created fiduciary relationship entitling pledgor to an accounting concerning sale of apartments).  Defendants have acted unilaterally in disposing of these bonds under murky circumstances, and have refused to properly account for their actions.[6]  Plaintiffs' allegations are sufficient to entitle them to an accounting, and the demand cannot be dismissed on a Rule 12(b)(6) motion, wherein Plaintiffs should be accorded all reasonable inferences.  *Cf. LaBarte v. Seneca Resources Corp.*, 285 A.D.2d 974, 976, 728 N.Y.S.2d 618, 622 (4th Dep't 2001) (plaintiff lessors' complaint against lessee seeking, *inter alia*, accounting concerning oil and gas royalties owed by lessee pursuant to lease stated causes of action for breach of fiduciary duty and accounting sufficient at motion to dismiss stage).

---

[6]    Additionally, New York law recognizes in a number of contexts that legal duties normally attendant to arms' length relationships may be heightened where one party acts with the benefit of superior knowledge, even where the transaction parties are sophisticated.  *See, e.g., Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (where one party to business transaction possesses superior relevant knowledge not readily available to other and knows that other party is acting on basis of mistaken knowledge, "special facts" doctrine imposes duty to disclose); *Warner Theatre Associates Ltd. Partnership v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) (transaction party's duty of reasonable inquiry, of which failure to perform would bar fraud claim, is subject to exception where undiscovered facts are peculiarly within other party's knowledge); *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 373-74 (S.D.N.Y. 1999) (court finds that "special relationship," giving rise to liability for negligent misrepresentation in context of corporate acquisition, could exist where defendants had exclusive knowledge of facts showing certain of their representations to be false, and there was possibility of ongoing relationship between parties after acquisition closed).  These doctrines further support the notion that Defendant's power – to act unilaterally and "behind the scenes" in certain respects concerning the valuation and disposition of the bond collateral – had a coordinate obligation beyond that in ordinary arms' length relationships.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant's motion should be denied in all respects. In the event that the Court dismisses one or more claims or demands in the Complaint, Plaintiffs respectfully request leave to replead.

Dated: New York, New York
      February 6, 2008

                                      s/ Sean F. O'Shea
                                      Sean F. O'Shea (SO5476)
                                      Michael E. Petrella (MP3794)
                                      **O'SHEA PARTNERS LLP**
                                      90 Park Avenue, 20th Floor
                                      New York, New York 10016
                                      Tel:    (212) 682-4426
                                      Fax:    (212) 682-4437

                                      *Counsel for Plaintiffs*

17