UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
                              :
LUMINENT MORTGAGE CAPITAL,    :
INC., *et al.*,               :
                              :
                 Plaintiffs,  :  07 CIV 10275 (RMB)
         v.                   :
                              :
BARCLAYS CAPITAL INC.,        :
                              :
                 Defendant.   :
------------------------------x

**REPLY MEMORANDUM OF LAW OF BARCLAYS CAPITAL INC.
IN SUPPORT OF ITS MOTION TO DISMISS**

 

Robinson B. Lacy (RL8282)
Jeffrey T. Scott (JS5014)
Jonathan Sedlak (JS3769)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

*Attorneys for Defendant
Barclays Capital Inc.*

February 20, 2008

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................1

I. Plaintiffs' Claim For Breach Of The Implied Covenant Of Good
   Faith And Fair Dealing Is Duplicative And Should Be Dismissed. ...................1

II. New York Law Prohibits Plaintiffs' Unjust Enrichment Claim. .......................2

III. Plaintiffs' Punitive Damages Claim Should Be Dismissed. ..............................3

   A. Plaintiffs Cannot Seek Punitive Damages Against BCI Based
      on Claims That Were Not Alleged in the Complaint .............................3

   B. The Repurchase Agreements Are Not Secured Loans ...........................4

   C. Plaintiffs Have Not and Cannot State a Claim for Conversion. .............7

   D. BCI's Alleged Conduct Was Not Directed at the Public .......................8

IV. No Fiduciary Relationship Exists Between The Parties
    To Support Plaintiffs' Accounting Claim. .........................................................9

CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adelphia Commc'ns Corp. v. Bank of Am.*,
    2007 Bankr. LEXIS 2851 (Bankr. S.D.N.Y. Aug. 17, 2007) ................................... 2

*Allen v. Westpoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991) .................................................................................... 9

*Atlantis Info. Tech. v. CA, Inc.*,
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) ............................................................... 1, 8

*Centre-Point Merch. Bank v. Am. Express Bank*,
    913 F. Supp. 202 (S.D.N.Y. 1996) ...................................................................... 1

*Dayan Enters. Corp. v. Nautica Apparel, Inc.*,
    2003 U.S. Dist. LEXIS 21344 (S.D.N.Y. Nov. 25, 2003) ............................... 1, 10

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*,
    2003 U.S. Dist. LEXIS 5145 (S.D.N.Y. Apr. 1, 2003) .................................... 3, 4

*Fantozzi v. Axsys Techs, Inc.*,
    2007 U.S. Dist. LEXIS 61448 (S.D.N.Y. Aug. 20, 2007) ..................................... 3

*Global Entm't, Inc. v. N.Y. Tel. Co.*,
    2000 U.S. Dist. LEXIS 16038 (S.D.N.Y. Oct. 31, 2000) ..................................... 9

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) .............................................................. 5, 6, 7

*Great White Bear, LLC v. Mervyns, LLC*,
    2007 U.S. Dist. LEXIS 31224 (S.D.N.Y. Apr. 26, 2007) ..................................... 2

*Harris v. Provident Life and Acc. Inc. Co.*,
    310 F.3d 73 (2d Cir. 2002) .................................................................................... 1

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*,
    159 F.3d 723 (S.D.N.Y. 1998) ............................................................................ 10

*Knudsen v. Quebecor Printing (U.S.A.) Inc.*,
    792 F. Supp. 234 (S.D.N.Y. 1992) ....................................................................... 3

*MacPhee v. Verizon Commc'ns Inc.*,
    2008 U.S. Dist. LEXIS 3230 (S.D.N.Y. Jan. 14, 2008) ....................................... 3

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
    107 F. Supp. 2d 325 (S.D.N.Y. 2000) ................................................................. 3

*Orange County Choppers, Inc.* v. *Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)..................................................................2

*Primavera Familienstiftung* v. *Askin*,
    130 F. Supp. 2d 450 (S.D.N.Y. 2001)..............................................................9, 10

*SEC* v. *Drysdale Sec. Corp.*,
    785 F.2d 38 (2d Cir. 1986)................................................................................4, 6

*Sing. Tong Teik PTE, Ltd.* v. *Coppola*,
    2007 U.S. Dist. LEXIS 60240 (E.D.N.Y. Aug. 17, 2007).....................................8

*Xpedior Creditor Trust* v. *Credit Suisse First Boston*,
    341 F. Supp. 2d 258 (S.D.N.Y. 2004)..................................................................2

## STATE CASES

*O'Dell* v. *N.Y. Prop. Ins. Underwriting Ass'n*,
    535 N.Y.S.2d 777 (3d Dep't 1988) .......................................................................9

*Priolo Commc'ns* v. *MCI Telecomms. Corp.*,
    669 N.Y.S.2d 376 (2d Dep't 1998) .......................................................................8

## OTHER AUTHORITY

Lynn Hume, *Heather Ruth, Head of TBMA, to Resign*,
    The Bond Buyer, Dec. 5, 2000...............................................................................6

## ARGUMENT

I.  **Plaintiffs' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Is Duplicative And Should Be Dismissed.**

Plaintiffs concede that "[t]he covenant of good faith and fair dealing is an implied term of every contract governed by New York law." (Plaintiffs' Memo. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pls. Opp'n") at 6.) Plaintiffs fail to recognize, however, that "[u]nder New York law, a claim for breach of an implied covenant of good faith and fair dealing *does not* provide a cause of action *separate from* a breach of contract claim." *Atlantis Info. Tech. v. CA, Inc.*, 485 F. Supp. 2d 224, 230 (E.D.N.Y. 2007) (emphasis added). Because Plaintiffs' Complaint contains a separate cause of action for breach of contract based on the same conduct alleged in support of the claim for breach of the implied covenant, the later duplicative claim should be dismissed under New York law. *See, e.g., Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (dismissing a duplicative claim and explaining that "[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, *but breach of that duty is merely a breach of the underlying contract*") (quotation omitted; emphasis added); *see also Centre-Point Merch. Bank v. Am. Express Bank*, 913 F. Supp. 202, 209 (S.D.N.Y. 1996) (holding the implied duty of good faith "is simply in aid and furtherance of other terms of the agreement of the parties" and "does not create a separate duty of fairness and reasonableness which can be independently breached") (citation omitted).[1]

Plaintiffs make no effort to distinguish the vast majority of decisions that apply New York law and dismiss duplicative claims for breach of the implied covenant of

---

[1] *See also Dayan Enters. Corp. v. Nautica Apparel, Inc.*, 2003 U.S. Dist. LEXIS 21344, at *5-7 (S.D.N.Y. Nov. 25, 2003) (dismissing claim for breach of the implied covenant, noting the claim "simply alleges a different way in which [defendant] allegedly breached a covenant which (although unwritten and implicit) formed part of the contract.")

good faith and fair dealing. Moreover, the cases cited by Plaintiffs do not support their claim. Indeed, the primary case relied on by Plaintiffs — *Xpedior Creditor Trust* v. *Credit Suisse First Boston*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004) — has recently been criticized for its "thin" reasoning. Specifically, the court stated that:

> *Xpedior* is thin in its support for what it said, and numerous cases in this district have held the opposite: a claim for breach of implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim asserted in the same complaint is redundant and must be dismissed on a motion to dismiss. The Court must agree with the majority of courts in this district, and dismiss the [plaintiffs'] claim for breach of the implied covenants of good faith and fair dealing against the [defendants].

*Adelphia Commc'ns Corp.* v. *Bank of Am.*, 2007 Bankr. LEXIS 2851, at *31-32 (Bankr. S.D.N.Y. Aug. 17, 2007) (citation omitted). This Court should follow the majority of its prior decisions, including its decision in *Great White Bear, LLC* v. *Mervyns, LLC*, 2007 U.S. Dist. LEXIS 31224, at *11 (S.D.N.Y. Apr. 26, 2007), and dismiss Plaintiffs' duplicative claim for breach of the implied covenant of good faith and fair dealing.

## II. New York Law Prohibits Plaintiffs' Unjust Enrichment Claim.

Plaintiffs argue that the Court should not dismiss their unjust enrichment claim because they are entitled, under Federal Rule of Civil Procedure 8, to plead unjust enrichment as an alternative claim to their breach of contract claim. (Pls. Opp'n 10.) While the Federal Rules permit parties to plead alternative claims, their alternative theories must state a claim in order to survive a motion to dismiss. As explained in *Orange County Choppers, Inc.* v. *Olaes Enters., Inc.*, 497 F. Supp. 2d 541 (S.D.N.Y. 2007), the right to plead alternative theories of liability does not absolve Plaintiffs from their obligation to allege each element of each claim. *Id.* at 557-58 (dismissing an alternatively pled unjust enrichment claim, because the alleged conduct fell within the terms of the contract). As demonstrated on pages 6-7 of BCI's Memorandum of Law in Support of its Motion to Dismiss ("BCI Br."), Plaintiffs' claim for unjust enrichment

must be dismissed not because it is an alternative theory of liability, but rather because substantive New York does not permit unjust enrichment claims where there is an express contract and no dispute that the alleged conduct falls within the scope of the contract. *See, e.g., New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (Berman, J.) (denying plaintiffs had the "absolute right to request alternative types of relief and to assert alternative theories" and granting defendants' motion to dismiss plaintiffs' unjust enrichment claim "[b]ecause both parties agree that a valid and enforceable contract exists between them" (citation omitted)).

The cases cited by Plaintiffs to support their unjust enrichment claims are distinguishable because they involve instances where the existence of a contract was in dispute, or where the alleged conduct was not covered by the contract.[2] Because the Complaint does not contain such allegations, Plaintiffs' unjust enrichment claim should be dismissed.

### III.   Plaintiffs' Punitive Damages Claim Should Be Dismissed.

#### A.   Plaintiffs Cannot Seek Punitive Damages Against BCI Based on Claims That Were Not Alleged in the Complaint.

Plaintiffs argue that the Court should not dismiss their punitive damages claim because Plaintiffs believe they could have asserted claims against BCI for conversion and breach of fiduciary duty. (Pls. Opp'n 12 & n.5.) The Court should not consider those "claims" because they are not alleged in the Complaint, and a complaint cannot be amended by a brief in opposition to a motion to dismiss. *See Disabled in*

---

[2] *See MacPhee v. Verizon Commc'ns Inc.*, 2008 U.S. Dist. LEXIS 3230, at *19-20 (S.D.N.Y. Jan. 14, 2008) (allowing unjust enrichment claim to proceed because the existence of the contract was in question); *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) (same); *Fantozzi v. Axsys Techs, Inc.*, 2007 U.S. Dist. LEXIS 61448, at *8 (S.D.N.Y. Aug. 20, 2007) (allowing unjust enrichment claim to proceed because it was premised on the assumption that the alleged conduct was not covered by the express contract).

*Action of Metro. N.Y.* v. *Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145, at *44 (S.D.N.Y. Apr. 1, 2003) (a "claim for relief may not be amended by the briefs in opposition to a motion to dismiss") (citations omitted).

Plaintiffs' attempt to salvage their punitive damages claim by relying on assertions not alleged in the Complaint is even more improper here because Plaintiffs declined the opportunity to amend their Complaint at the pre-motion conference on December 20, 2007, even though this Court specifically asked Plaintiffs whether they wanted to amend their Complaint before BCI filed its motion to dismiss. (*See* Reply Affidavit of Jeffrey T. Scott, sworn to February 20, 2008, submitted in support of the motion ¶ 3.) Plaintiffs elected to stand on their Complaint, even after this Court informed them that they would not be permitted to amend their Complaint if the Court dismissed any of Plaintiffs' claims. (*See id.*)

### B. The Repurchase Agreements Are Not Secured Loans.

Even if the Court considers Plaintiffs' conversion claim, that claim should be dismissed. Plaintiffs' central argument in support of their purported conversion and accounting claims is based on the fundamental misconception that the bonds they sold to BCI pursuant to their repurchase agreements can be recharacterized as collateral for secured loans. (*See* Pls. Opp'n 12-13, 15-16.) Under the controlling decisions of this Court and the Second Circuit, that argument is entirely without merit. In *SEC* v. *Drysdale Sec. Corp.*, 785 F.2d 38, 41 (2d Cir. 1986), the Second Circuit explained "a most significant difference between repos and standard collateralized loans" as follows:

> In the latter transaction, the lender holds pledged collateral for security and may not sell it in the absence of a default. In contrast, repo "lenders" take title to the securities received and can trade, sell or pledge them.

Thus, in a "repo" the transferred securities do not constitute collateral, and BCI's disposition of those securities cannot provide any basis for accounting or punitive damages claims.

This Court rejected substantially the same attempt to recharacterize repurchase agreements as secured loans, in the context of a motion to dismiss, in *Granite Partners, L.P.* v. *Bear Stearns & Co.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998). In *Granite Partners*, certain plaintiffs had entered into repo transactions using master repurchase agreements on standard forms prepared by the Public Securities Association ("PSA") prior to March 1994. *Id.* at 284-85. In Count XI of the complaint, the plaintiffs asserted that the defendants violated obligations applicable to secured parties and pledgees under Article 9 of the UCC and the common law because "these repos were the functional equivalent of secured loans." *Id.* at 298. The Court dismissed the claims because the repos did not constitute secured loans. *Id.* at 304.

> Because the standard industry documentation for repo transactions prepared by the BMA and used by the Brokers in this case explicitly states that the parties "intend that all Transactions hereunder be sales and purchases and not loans," PSA Agreement ¶ 6, that intention must be honored.

*Id.* at 302.

The same language quoted from paragraph 6 of the master agreements in *Granite Partners* appears in paragraph 6 of the Master Repurchase Agreements ("MRAs") governing the Plaintiffs' repos with BCI. Paragraph 6 of the MRAs states that "the parties intend that all Transactions hereunder be sales and purchases *and not loans* . . . ." (Affidavit of Jeffrey T. Scott, sworn to January 7, 2008 ("Jan. 2008 Scott Aff."), Exhs. A, B, C, and D at ¶ 6 (emphasis added).)

In fact, the MRAs between the Plaintiffs and BCI are documented on the 1996 revision of the form of master agreement discussed in *Granite Partners*.[3] A comparison of the MRAs with the opinion in *Granite Partners* shows that the relevant terms are either the same as the *Granite Partners* agreements or provide even stronger grounds for concluding that the repos are not secured loans.

In a footnote to the passage from *Granite Partners* quoted above, this Court observed:

> The operative provisions of the PSA Agreement conform to this stated intention. The parties are denominated "Buyer" and "Seller," they agree that on the "Purchase Date" for a transaction the "Purchased Securities" will be transferred to the "Buyer" or its agent against payment of the "Purchase Price." On the "Repurchase Date," this process occurs in reverse. The parties further acknowledge the difference between their repo transactions and conventional secured indebtedness by agreeing that each "Transaction" is a "repurchase agreement" and a "securities contract" entitled to the benefits of special protective provisions under the Bankruptcy Code. Perhaps most telling, the parties agree that the title to the Purchased Securities passes to the Buyer, who is explicitly permitted to engage in repos with the Purchased Securities or otherwise transfer or hypothecate them. *See Drysdale*, 785 F.2d at 41. Under prevailing market practice, the Buyer, as owner, may sell the Purchased Securities.

17 F. Supp. 2d at 302 n.13. The provisions described in the second and third sentences of this footnote appear in paragraphs 1, 2(n)-(q), and 3 of the MRAs. The language referred to in the fourth sentence appears in paragraph 19 of the MRAs. (*See* Jan. 2008 Scott Aff., Exhs. A, B, C, and D at ¶¶ 1, 2(n)-(q), 3, and 19.) The language referred to in the fifth sentence, in which the "parties agree that the title to the Purchased Securities passes to the Buyer," was replaced by even stronger language in the 1996 form used by BCI and the

---

[3] The first page of the BCI MRAs shows that they are the "September 1996 Version" prepared by the BMA. (*See* Jan. 2008 Scott Aff., Exhs. A, B, C, and D at 1.) The PSA changed its name to the BMA in 1997. (*See* Lynn Hume, Heather Ruth, Head of TBMA, to Resign, The Bond Buyer, Dec. 5, 2000.) The *Granite Partners* opinion refers to the PSA Master Repurchase Agreement as the "standard industry documentation for repo transactions prepared by the BMA." 17 F. Supp. 2d at 302.

Plaintiffs. Paragraph 8 (the same paragraph referred to in *Granite Partners*, *see* 17 F. Supp. 2d at 300) now provides:

> *All of the Seller's interest* in the Purchased Securities shall pass to the Buyer on the Purchase Date and, unless otherwise agreed by the Buyer and Seller, nothing in this agreement shall preclude Buyer from engaging in repurchase transactions with the Purchased Securities or otherwise *selling*, transferring, pledging, or hypothecating the purchased Securities . . . .

(Jan. 8 Scott Aff., Exhs. A, B, C and D at ¶ 8) (emphasis added.) Thus, the MRAs stipulate that BCI acquired all of the Plaintiffs' interest in the Purchased Securities, not just title. Moreover, whereas in *Granite Partners* the Court relied on "prevailing market practice" to establish that the defendants were entitled to sell the Purchased Securities, the MRAs expressly authorize such sales.

Although in *Granite Partners* the Court relied primarily on the plain language of the PSA Master Repurchase Agreement, it noted that policy considerations also supported its holding:

> [I]gnoring the affirmative intent of the parties would inject unpredictability and insecurity in the manner by which major financial institutions obtain credit. The decision by market participants to enter into a repo transaction documented using the PSA Agreement, structured as a purchase and sale, thus carries with it a wide variety of legal and regulatory consequences. Market participants who prefer to enter into secured lending transactions rather than repos may do so (with the attendant legal result that their transaction will be treated as a loan); participants who prefer to enter into a sale and wholly distinct forward purchase (with attendant legal consequences) may also do so. The determination of market participants that elect to enter into a repo transaction has been and should be respected and their settled expectations will not be overturned.

17 F. Supp. 2d at 302. For all the reasons stated in *Granite Partners*, this Court should reject Plaintiffs' contention that their repurchase agreements constituted secured loans.

### C. Plaintiffs Have Not and Cannot State a Claim for Conversion.

Plaintiffs' punitive damages claim should also be dismissed because Plaintiffs have not and cannot state a claim for conversion under New York law. Plaintiffs insist that BCI's "wrongful liquidation of the bonds, i.e. collateral, in its

-7-

possession is actionable as conversion." (Pls. Opp'n 12-13.)[4] This claim must be dismissed because the bonds were not collateral, and the Plaintiffs had no property interest in them. In effect, Plaintiffs have attempted to repackage their breach of contract claim as a conversion claim. But BCI's alleged liquidation of the bonds is conduct that is clearly covered by the repurchase agreements, and forms the basis for Plaintiffs' breach of contract claim. (*See* Comp. ¶¶ 20, 52.) Accordingly Plaintiffs' conversion claim is predicated on an alleged breach of contract, and cannot be sustained under New York law. *Sing. Tong Teik PTE, Ltd.* v. *Coppola*, 2007 U.S. Dist. LEXIS 60240, at *9 (E.D.N.Y. Aug. 17, 2007) (*quoting Priolo Commc'ns* v. *MCI Telecomms. Corp.*, 669 N.Y.S.2d 376, 376 (2d Dep't 1998)) (holding "[a] claim to recover damages for conversion cannot be predicated on a mere breach of contract").

### D. BCI's Alleged Conduct Was Not Directed at the Public.

Plaintiffs' punitive damages claim should also be dismissed because BCI's alleged conduct was not directed at the public. In an attempt to cure their deficient punitive damages claim, Plaintiffs make wildly speculative assertions in their opposition brief that are not alleged anywhere in the Complaint. (*See* Pls. Opp'n 14-15 (speculating that BCI made "improper margin calls with its other repurchase agreement counterparties," and that BCI participated in a "scheme" that "compounds the current financial crisis," which is part of the "biggest financial story since the Enron debacle").) Because

---

[4] Plaintiffs also contend in a footnote in their opposition brief that BCI breached a purported "fiduciary duty" owed to Plaintiffs. Plaintiffs do not allege, however, that BCI owed Plaintiffs any fiduciary duty in their Complaint, and no fiduciary relationship existed. (*See infra* Section IV.) Even if the Court found that there was a fiduciary relationship between BCI and Plaintiffs, Plaintiffs' "breach of fiduciary duty" claims should still be dismissed as duplicative of Plaintiffs' breach of contract claim. *See Atlantis Info. Tech.*, 485 F. Supp. 2d at 232 (dismissing duplicative breach of fiduciary duty claim). Finally, apparently recognizing that Plaintiffs' unjust enrichment has no basis under New York law, Plaintiffs do not even claim in their opposition brief that their unjust enrichment claim is an independent tort in support of its punitive damages claim.

Plaintiffs' entirely improper and baseless assertions do not appear in the Complaint, they should be disregarded by the Court. *See, e.g., Allen* v. *Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Even if the Court considers these unsupported assertions, the Court should still dismiss Plaintiffs' punitive damages claim because Plaintiffs' conclusory statements are insufficient to plead punitive damages under New York law. *See, e.g., O'Dell* v. *N.Y. Prop. Ins. Underwriting Ass'n*, 535 N.Y.S.2d 777, 792 (3d Dep't 1988) (holding conclusory assertions of public injury are insufficient to sustain a claim for punitive damages).

IV. **No Fiduciary Relationship Exists Between The Parties To Support Plaintiffs' Accounting Claim.**

Plaintiffs attempt to cure their improperly pled claim for accounting by asserting that the repurchase transactions were "in substance the giving of collateral," which created a fiduciary relationship between BCI and Plaintiffs. (Pls. Opp'n 16.) The Complaint contains no allegations that BCI owed Plaintiffs a fiduciary duty, and the Court should not consider this allegation raised for the first time in Plaintiffs' brief. Further, as stated above, this case involves repurchase transactions, not secured loans as Plaintiffs' contend. (*See supra* Section III. B.) Regardless of how Plaintiffs attempt to characterize the repurchase transactions, they created an arm's length business relationship between BCI and Plaintiffs and did not give rise to a fiduciary relationship. *See Global Entm't, Inc.* v. *N.Y. Tel. Co.*, 2000 U.S. Dist. LEXIS 16038, at *20 (S.D.N.Y Oct. 31, 2000) (no fiduciary relationship existed between parties to an arm's length business relationship.) Additionally, in *Primavera Familienstiftung* v. *Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001), the Court analyzed the duties owed under repurchase agreements and concluded that, regardless of how those transactions were ultimately

characterized, no fiduciary duties were owed to the repurchase seller (*i.e.*, Luminent) by the repurchase buyer (*i.e.*, BCI). *Id.* at 543-44.

Finally, Plaintiffs do not address why they cannot obtain all the information they seek in their breach of contract claim. (*See* BCI Br. 8.) Plaintiffs' accounting claim serves no useful purpose, and should be dismissed. *See Dayan Enters.*, 2003 U.S. Dist. LEXIS 21344, at *2 (dismissing an accounting claim because "a damages suit for breach of contract suit provides an adequate legal remedy.")

## CONCLUSION

For the reasons stated above and in BCI's opening brief, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, an accounting, and punitive damages should be dismissed. The Court should also deny Plaintiffs' request for leave to replead in light of their rejection of an opportunity to amend the Complaint before BCI filed its motion to dismiss and the futility of any amendment because the claims that are the subject of BCI's motion to dismiss are unsustainable under New York law.[5]

Dated: New York, New York
    February 20, 2008

_____/JMS
Robinson B. Lacy (RL8282)
Jeffrey T. Scott (JS5014)
Jonathan Sedlak (JS3769)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000

*Attorneys for Defendant*
*Barclays Capital Inc.*

---

[5] *See Hunt* v. *Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (S.D.N.Y. 1998) (denying leave to amend as futile when amendment would fail to state an actionable claim).

## CERTIFICATE OF SERVICE

I hereby certify that I am admitted to the Bar of this Court and that, on February 20, 2008, a true copy of **DEFENDANT BARCLAYS CAPITAL INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**, was served by hand on Michael E. Petrella, Esq., O'Shea Partners LLP, 90 Park Avenue, 20th Floor, New York, New York 10016.

Jonathan M. Sedlak